UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

SHARONDA D. JACKSON,

                      Plaintiff,

                                                      Case # 17-CV-6268-FPG

v.

                                                      DECISION AND ORDER

NANCY A. BERRYHILL, ACTING
COMMISSIONER OF SOCIAL SECURITY,

                      Defendant.
_____

## INTRODUCTION

Sharonda D. Jackson brings this action pursuant to the Social Security Act seeking review of the final decision of the Acting Commissioner of Social Security that denied her application for disability insurance benefits ("DIB") under Title II of the Act. ECF No. 1. The Court has jurisdiction over this action under 42 U.S.C. § 405(g).

Both parties moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). ECF Nos. 13, 16. For the reasons that follow, the Commissioner's motion is GRANTED and Plaintiff's motion is DENIED.

## BACKGROUND

On March 30, 2010, Jackson protectively applied for DIB and Supplemental Security Income ("SSI")[1] with the Social Security Administration ("the SSA"). Tr.[2] 484-94. She alleged disability since August 22, 2009, due to chronic spasms and back and neck pain. Tr. 509. On January 24, 2012, Jackson and a vocational expert ("VE") testified at a hearing via videoconference before Administrative Law Judge ("ALJ") MaryJoan McNamara. Tr. 112-69.

---

[1] Jackson later withdrew her SSI application; thus, the ALJ's decision discusses her DIB application only. Tr. 21.
[2] References to "Tr." are to the administrative record in this matter.

1

On March 22, 2012, ALJ McNamara issued a decision finding that Jackson was not disabled within the meaning of the Act. Tr. 180-99. On July 26, 2013, the Appeals Council vacated that decision and remanded the case for further proceedings. Tr. 200-05.

On remand, the case was assigned to ALJ John P. Costello. Tr. 21. On January 22, 2014, ALJ Costello held a second hearing at which Jackson and a VE appeared and testified. Tr. 75-111. On March 21, 2014, the ALJ issued a decision finding that Jackson was not disabled within the meaning of the Act. Tr. 206-23. On August 12, 2014, the Appeals Council vacated that decision and remanded the case for further proceedings. Tr. 224-28.

On January 27, 2015, ALJ Costello held a third hearing at which Jackson and a VE appeared and testified. Tr. 40-74. On July 10, 2015, the ALJ issued a decision finding that Jackson was not disabled within the meaning of the Act, which is the decision currently before the Court for review. Tr. 21-33. On January 14, 2016, the Appeals Council denied Jackson's request for review. Tr. 4-9. Thereafter, Jackson commenced this action seeking review of the Commissioner's final decision. ECF No. 1.

## LEGAL STANDARD

### I. District Court Review

"In reviewing a final decision of the SSA, this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (quotation marks omitted); *see also* 42 U.S.C. § 405(g). The Act holds that a decision by the Commissioner is "conclusive" if it is supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence means more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009)

2

(quotation marks omitted). It is not the Court's function to "determine *de novo* whether [the claimant] is disabled." *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998) (quotation marks omitted); *see also Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990) (holding that review of the Secretary's decision is not *de novo* and that the Secretary's findings are conclusive if supported by substantial evidence).

## II.  Disability Determination

An ALJ must follow a five-step sequential evaluation to determine whether a claimant is disabled within the meaning of the Act. *See Parker v. City of New York*, 476 U.S. 467, 470-71 (1986). At step one, the ALJ must determine whether the claimant is engaged in substantial gainful work activity. *See* 20 C.F.R. § 404.1520(b). If so, the claimant is not disabled. If not, the ALJ proceeds to step two and determines whether the claimant has an impairment, or combination of impairments, that is "severe" within the meaning of the Act, meaning that it imposes significant restrictions on the claimant's ability to perform basic work activities. 20 C.F.R. § 404.1520(c). If the claimant does not have a severe impairment or combination of impairments, the analysis concludes with a finding of "not disabled." If the claimant does, the ALJ continues to step three.

At step three, the ALJ examines whether a claimant's impairment meets or medically equals the criteria of a listed impairment in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"). 20 C.F.R. § 404.1520(d). If the impairment meets or medically equals the criteria of a Listing and meets the durational requirement (20 C.F.R. § 404.1509), the claimant is disabled. If not, the ALJ determines the claimant's residual functional capacity ("RFC"), which is the ability to perform physical or mental work activities on a sustained basis, notwithstanding limitations for the collective impairments. *See* 20 C.F.R. § 404.1520(e)-(f).

The ALJ then proceeds to step four and determines whether the claimant's RFC permits him or her to perform the requirements of his or her past relevant work. 20 C.F.R. § 404.1520(f). If the claimant can perform such requirements, then he or she is not disabled. *Id.* If he or she cannot, the analysis proceeds to the fifth and final step, wherein the burden shifts to the Commissioner to show that the claimant is not disabled. 20 C.F.R. § 404.1520(g). To do so, the Commissioner must present evidence to demonstrate that the claimant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy" in light of his or her age, education, and work experience. *See Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (quotation marks omitted); *see also* 20 C.F.R. § 404.1560(c).

## DISCUSSION

### I. The ALJ's Decision

The ALJ's decision analyzed Jackson's claim for benefits under the process described above. At step one, the ALJ found that Jackson had not engaged in substantial gainful activity since the alleged onset date. Tr. 24. At step two, the ALJ found that Jackson has the following severe impairments: lumbosacral sprain/spine disorder, cervical sprain with headaches, and knee sprain. Tr. 24-26. At step three, the ALJ found that these impairments, alone or in combination, did not meet or medically equal any Listings impairment. Tr. 26.

Next, the ALJ determined that Jackson retains the RFC to perform light work[3] with additional limitations. Tr. 26-31. Specifically, the ALJ found that Jackson can occasionally lift and carry up to 10 pounds; can stand, walk, and sit up to four hours in an eight-hour workday; can

---

[3] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, [the claimant] must have the ability to do substantially all of these activities. If someone can do light work, [the SSA] determine[s] that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time." 20 C.F.R. § 404.1567(b).

4

stand, walk, and sit for up to 30 minutes at a time, but then requires one minute to change positions; can only reach overhead occasionally, but can otherwise reach, handle, and finger continuously; can only occasionally climb ladders and stairs and stoop, but can otherwise balance, kneel, crouch, and crawl continuously; and has no environmental restrictions. Tr. 26.

At step four, the ALJ found that this RFC prevents Jackson from performing her past relevant work as a fast food restaurant manager. Tr. 31-32. At step five, the ALJ relied on the VE's testimony and found that Jackson can adjust to other work that exists in significant numbers in the national economy given her RFC, age, education, and work experience. Tr. 32-33. Specifically, the VE testified that Jackson can work as an addressing clerk, order clerk, and lens inserter. *Id.* Accordingly, the ALJ concluded that Jackson was not "disabled" under the Act. Tr. 33.

## II. Analysis

Jackson argues that remand is required because the ALJ (1) improperly weighed two medical opinions, which rendered the RFC unsupported by substantial evidence; and (2) erred when he relied on VE testimony in response to a hypothetical question that did not account for all of her limitations. ECF No. 14 at 9-14; ECF No. 17. These arguments are addressed in turn below.

### A. First Argument: Improper Evaluation of Medical Opinions

Jackson asserts that the ALJ improperly evaluated the opinion of her treating physician Laurie Donohue, M.D. ECF No. 14 at 9-12. Specifically, Jackson argues that the ALJ failed to provide the requisite "good reasons" for assigning only little weight to Dr. Donohue's opinion. *Id.* Jackson also asserts that the ALJ erred when he rejected the opinion of consultative examiner Harbinder Toor, M.D. that she has difficulty moving her neck. *Id.* at 12-13. Jackson contends

that, because the ALJ improperly evaluated these medical opinions, the RFC assessment is not supported by substantial evidence. *Id.*

### 1. Treating Physician Dr. Donohue

#### a. Treating Physician Rule

The "treating physician rule" is "a series of regulations set forth by the Commissioner . . . detailing the weight to be accorded a treating physician's opinion." *De Roman v. Barnhart*, No. 03 Civ. 0075 (RCC) (AJP), 2003 WL 21511160, at *9 (S.D.N.Y. July 2, 2003) (citing 20 C.F.R. § 404.1527). Under this rule, the ALJ must give controlling weight to a treating physician's opinion when it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] record." 20 C.F.R. § 404.1527(c)(2); *see also Green-Younger v. Barnhart*, 335 F.3d 99, 106 (2d Cir. 2003). An ALJ may discount a treating physician's opinion if it does not meet this standard, but he must "comprehensively set forth [his] reasons for the weight assigned to a treating physician's opinion." *Halloran v. Barnhart*, 362 F.3d 28, 33 (2d Cir. 2004); *see also* 20 C.F.R. § 404.1527(c)(2) ("We will always give good reasons in our notice of determination or decision for the weight we give [the claimant's] treating source's opinion.").

When a treating physician's opinion is not given "controlling" weight, the ALJ must consider several factors in determining how much weight it should receive. The ALJ must consider "the length of the treatment relationship and the frequency of examination; the nature and extent of the treatment relationship; the relevant evidence, particularly medical signs and laboratory findings, supporting the opinion; the consistency of the opinion with the record as a whole; and whether the physician is a specialist in the area covering the particular medical issues." *Burgess*

*v. Astrue*, 537 F.3d 117, 129 (2d Cir. 2008) (quotation marks, alterations, and citations omitted); *see also* 20 C.F.R. § 404.1527(c)(1)-(6).

### b. Dr. Donohue's Opinions

In April 2010, Dr. Donohue encouraged Jackson to apply for permanent disability because she did not seem to be improving eight months after her car accident. Tr. 738. In August 2010, Dr. Donohue opined that Jackson "is only able to be upright for a few hours before then requiring rest by lying down to take stress off her neck." Tr. 740. She also opined that Jackson's injury "is permanent and she will have limited function of neck muscles." *Id.* In January 2012, Dr. Donohue indicated that, despite physical therapy and medication, Jackson "is left with significant residual pain and disability that prevents her from seeking employment." Tr. 748-49.

On January 10, 2012, Dr. Donohue completed a Medical Source Statement wherein she opined that Jackson had severe restrictions. Tr. 706-08. She indicated, for example, that Jackson can sit and stand for only 20 minutes at a time, can sit, stand, and walk for less than two hours in an eight-hour workday, and must be able to shift positions at will. Tr. 706. Dr. Donohue also opined that Jackson needs to take a 10-minute break every 20 minutes. *Id.* She indicated that Jackson can occasionally lift up to 10 pounds, but can never lift more than that amount. Tr. 707. Dr. Donohue opined that Jackson cannot turn her head right or left, stoop, bend, or climb ladders; can rarely look down, crouch, or squat; and can occasionally look up, hold her head in a static position, twist, climb stairs, and reach with her arms. *Id.*

Dr. Donohue opined that Jackson's impairments will cause her to be off task more than 20% of an eight-hour workday, to have "good" and "bad" days, and to be absent about four days per month. Tr. 708.

### c. The ALJ's Evaluation of Dr. Donohue's Opinions

The ALJ's decision thoroughly summarized Dr. Donohue's treatment notes from 2009 through 2012. Tr. 27-31. The ALJ also summarized the opinions set forth above and afforded them "little weight." Tr. 31. He discounted Dr. Donohue's opinions because he found them inconsistent with and unsupported by the record evidence, based primarily on Jackson's subjective complaints, and inconsistent with Dr. Donohue's conservative treatment recommendations. Tr. 31. These reasons are addressed in turn below.

#### i. Consistency with Other Record Evidence

The SSA's regulations authorize the ALJ to reduce the weight he affords a treating physician's opinion based on its consistency with the record as a whole. *See* 20 C.F.R. § 404.1527(c)(4). In accordance with those regulations, the ALJ discounted Dr. Donohue's opinions in part because he found them inconsistent with and unsupported by the record evidence. Tr. 31. Although Jackson asserts that this reason is "overly vague" and does not provide a "clear basis" for rejecting Dr. Donohue's opinions (ECF No. 14 at 12), the ALJ's decision cites to and discusses medical evidence that contradicts Dr. Donohue's restrictive opinions. Tr. 27-31.

The ALJ noted, for example, that the record lacks objective medical evidence suggestive of a serious spine disease. Tr. 30. The ALJ found the lack of objective abnormalities to be "particularly striking" in light of Jackson's reports of very serious symptoms and limitations, and her assertion that she spends most of the day lying down due to pain. *Id.* The ALJ noted that Jackson's treatment notes did not demonstrate muscle atrophy or any persistent deficits in strength or sensation in the extremities. *Id.* (referring to Tr. 684-85, 751-52 (indicating no muscle atrophy, full strength of the upper and lower extremities, and no sensory abnormalities), Tr. 659 (indicating

normal sensations bilaterally and normal motor strength in the upper extremities) and Tr. 748 (indicating normal sensations and lower extremities bilaterally)).

The ALJ also pointed out that Dr. Toor's imaging studies revealed no significant abnormalities. Tr. 30, 685, 752. Specifically, cervical spine x-rays performed on November 16, 2010 and February 23, 2012 were negative, and lumbosacral spine x-rays performed on the same days revealed only some straightening. Tr. 687-88, 754. The ALJ recognized that imaging studies are "not as detailed as MRI or CT scans," but reasoned that the negative x-rays were inconsistent with "the presence of a disease process which would be expected to result in the very serious symptoms and limitations" Jackson alleged. Tr. 30.

The ALJ noted that the clinical abnormalities Drs. Donohue and Toor cited were "subjective deficits" like spine tenderness and restricted range of motion secondary to pain. *Id.* (referring to Tr. 684-85, 751-52 (Dr. Toor's examination notes) and Tr. 633-53, 661-74, 677-82, 721-24, 731-36, 740-45, 748-49 (Dr. Donohue's treatment notes)). The ALJ also noted that Jackson's difficulty with orthopedic maneuvers during Dr. Toor's examination could be seen as subjective, as she declined to perform some movements and her range of motion deficits appeared secondary to reported pain. Tr. 30 (referring to Tr. 684 (indicating that Jackson declined to lie down on the examination table because of back and neck pain and exhibited decreased movement due to pain)).

Based on all of the above, the ALJ concluded that "there is little objective medical evidence which would correlate with a spine impairment as limiting as [Jackson] alleges." Tr. 30. In accordance with the regulations, the ALJ considered whether Dr. Donohue's opinions were consistent with the record as a whole, and he sufficiently described the evidence that he found to contradict her opinions. Moreover, the ALJ was entitled to weigh the above evidence against the

9

other record evidence and to resolve any conflicts when evaluating Dr. Donohue's opinions. *See Veino v. Barnhart*, 312 F.3d 578, 588 (2d Cir. 2002) ("Genuine conflicts in the medical evidence are for the Commissioner to resolve.") (citation omitted); *Cage v. Comm'r of Soc. Sec.*, 692 F.3d 118, 122 (2d Cir. 2012) (when the court reviews a denial of disability benefits it must "defer to the Commissioner's resolution of conflicting evidence"). Accordingly, the ALJ did not err when he discounted Dr. Donohue's opinions on this basis.

### ii. Reliance on Subjective Complaints

The ALJ also discounted Dr. Donohue's opinions because they appeared to be based on Jackson's subjective reports instead of objective medical evidence. Tr. 31. Jackson argues that this is an improper reason to discount Dr. Donohue's opinions because a patient's complaints are an essential tool to aid the physician's treatment. ECF No. 14 at 12.

It is true that a medical source's reliance on the claimant's subjective complaints is "not a valid reason" to reject that source's opinion. *Mahon v. Colvin*, No. 15-CV-398-FPG, 2016 WL 3681466, at *4 (W.D.N.Y. July 6, 2016) (finding that the ALJ erred when he rejected a consultative examiner's opinion solely because it "appear[ed] to be based on unsubstantiated subjective complaints"); *see also Green-Younger*, 335 F.3d at 107 (holding that a doctor's reliance on the plaintiff's subjective complaints "hardly undermines his opinion as to her functional limitations" because "a patient's report of complaints, or history, is an essential diagnostic tool") (citation omitted).

It is within the ALJ's discretion, however, to consider the claimant's subjective complaints, evaluate her credibility, and make "an independent judgment, in light of medical findings and other evidence, regarding the true extent of the pain alleged." *Jackson v. Astrue*, No. 1:05-CV-01061 (NPM), 2009 WL 3764221, at *7 (N.D.N.Y. Nov. 10, 2009) (citing *Marcus v. Califano*, 615 F.2d

10

23, 27 (2d Cir. 1979)). "It is the function of the Commissioner, not the reviewing court, to 'resolve evidentiary conflicts and to appraise the credibility of witnesses, including the claimant.'" *Id.* (quoting *Caroll v. Sec'y of Health & Human Servs.*, 705 F.2d 638, 642 (2d Cir. 1983)).

In turn, the ALJ's credibility determination may influence how he weighs the medical opinions, especially when those opinions are based on the claimant's subjective statements. *See Julin v. Colvin*, 826 F.3d 1082, 1086 (8th Cir. 2016) (noting that "[t]he ALJ's decision to discount [the plaintiff]'s credibility influenced the ALJ's weighing of medical opinions that were based in part on [the plaintiff]'s reports"). When the ALJ finds the claimant's allegations not credible, he is entitled to discount the opinion of a medical source who relied on the claimant's subjective complaints. *See id.* ("Because the ALJ declined to credit [the plaintiff], the ALJ was entitled to discount [the treating physician]'s opinions insofar as they relied on [the plaintiff]'s subjective complaints.") (citation omitted); *see also Lewis v. Colvin*, 548 F. App'x 675, 678 (2d Cir. 2013) (finding that the ALJ was not required to give controlling weight to treating physician's opinion where "it was unsupported by the objective medical evidence" and "based on [the plaintiff's] subjective complaints") (summary order).

Here, the ALJ's decision extensively analyzed and discussed Jackson's credibility, and he found her allegations of severe pain and an inability to work inconsistent with the evidence and "not wholly credible." Tr. 30. Jackson does not specifically challenge the ALJ's credibility determination. As noted, it is within the ALJ's discretion to make such a finding, and if that finding is "supported by substantial evidence, the court must uphold the ALJ's decision to discount a claimant's subjective complaints of pain." *Jackson*, 2009 WL 3764221, at *7 (citation omitted). The Court nonetheless reviewed the ALJ's credibility determination, and it finds that he considered

11

the requisite factors[4]—including Jackson's symptoms, daily activities, medications, and treatment history—and that the credibility determination is supported by substantial evidence.

Accordingly, because the ALJ found Jackson's subjective complaints not credible, he was entitled to discount Dr. Donohue's opinions where they relied on those complaints. In discounting Dr. Donohue's opinions, the ALJ noted that they appeared "to be based primarily on [Jackson]'s subjective reports regarding her symptoms," even though "the objective record provides no clear basis for such serious limitations." Tr. 31. The ALJ also explained that "Dr. Donohue appears to have taken [Jackson]'s reports of intense pain with serious difficulties performing basic activities as accurate despite the general lack of objective clinical indications of serious disease process." Tr. 29, 31. Thus, for the reasons stated above, the ALJ did not err when he discounted Dr. Donohue's opinions on this basis.

### iii. Conservative Treatment

Finally, Jackson asserts that it was improper for the ALJ to discount Dr. Donohue's opinions based on Dr. Donohue's conservative treatment recommendations. ECF No. 14 at 12.

The ALJ may not discount a treating physician's opinion "merely because [she] has recommended a conservative treatment regimen." *Burgess*, 537 F.3d at 129 (citing *Shaw v. Chater*, 221 F.3d 126, 134 (2d Cir. 2000) (the district court erred in ruling that the treating physician's conservative treatment recommendations constituted substantial evidence that the claimant was not disabled)). This is because neither the ALJ nor the Court may "impose their respective notions that the severity of a physical impairment directly correlates with the

---

[4] When the objective medical evidence does not substantiate the claimant's alleged symptoms, the ALJ must assess the credibility of the claimant's statements considering the following factors: (1) the claimant's daily activities; (2) the location, duration, frequency, and intensity of the claimant's symptoms; (3) precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of medications taken to alleviate symptoms; (5) other treatment received to relieve symptoms; (6) measures the claimant has taken to relieve symptoms; and (7) other factors concerning the claimant's functional limitations and restrictions due to symptoms. 20 C.F.R. § 404.1529(c)(3)(i)-(vii).

intrusiveness of the medical treatment ordered." *Id.* (citing *Shaw*, 221 F.3d at 134-35) (alterations omitted).

Here, the ALJ noted that the treatment Dr. Donohue provided "does not suggest the presence of a disabling spine impairment." Tr. 29. He explained that:

> Dr. Donohue did not order imaging studies of the spine (her diagnoses were "strains" even two years after [Jackson's] accident); she did not suggest treatment beyond brief runs of physical therapy and non-narcotic pain medication. [Jackson] was not referred to pain management or to a spine specialist for more intensive evaluation, again despite the fact that Dr. Donohue considered [Jackson's] impairment "permanently disabling."

*Id.*

In discounting Dr. Donohue's opinions, the ALJ noted that "Dr. Donohue herself ordered only medication and conservative treatment; she ordered no imaging or other specialized care, which again also suggests that [Jackson] is not as limited as Dr. Donohue indicates." Tr. 31.

The ALJ did not discount Dr. Donohue's opinions solely because she recommended conservative treatment; as discussed previously, he also discounted her opinions because they were inconsistent with the record evidence and based on Jackson's subjective complaints, which the ALJ found not credible. Jackson's conservative treatment regimen, coupled with the lack of objective medical evidence and the negative x-rays discussed above, supports the ALJ's ultimate finding that Jackson is not disabled. *See Burgess*, 537 F.3d at 129 ("The fact that a patient takes only over-the-counter medicine to alleviate her pain may, however, help to support the Commissioner's conclusion that the claimant is not disabled if that fact is accompanied by other substantial evidence in the record, such as the opinions of other examining physicians and a negative MRI."); *see also Netter v. Astrue*, 272 F. App'x 54, 56 (2d Cir. 2008) (summary order) ("[B]ecause the district court relied on [the treating physician]'s conservative treatment regimen

13

merely as additional evidence supporting the ALJ's determination rather than as 'compelling' evidence sufficient in itself to overcome an 'otherwise valid medical opinion,' the district court did not impermissibly 'substitute [its] own expertise or view of the medical proof for the treating physician's opinion.'") (citations omitted). Accordingly, the ALJ did not err when he discounted Dr. Donohue's opinions on this basis.

For the reasons stated, the Court finds that the ALJ did not violate the treating physician rule when he evaluated Dr. Donohue's opinions.

### 2. Consultative Examiner Dr. Toor

Jackson also argues that the ALJ improperly evaluated the opinion of consultative examiner Dr. Toor, who examined Jackson in 2010 and 2012. ECF No. 14 at 12-13. Specifically, Jackson asserts that the ALJ did not "adequately explain the basis" for rejecting Dr. Toor's opinion that she had neck limitations. *Id.*

An ALJ is not required to "reconcile explicitly every conflicting shred of medical testimony," *Dioguardi v. Comm'r of Soc. Sec.*, 445 F. Supp. 2d 288, 297 (W.D.N.Y. 2006) (citation omitted), and "[t]here is no absolute bar to crediting only portions of medical source opinions," *Younes v. Colvin*, No. 1:14-CV-170 (DNH/ESH), 2015 WL 1524417, at *8 (N.D.N.Y. Apr. 2, 2015). Nonetheless, when the ALJ's RFC assessment "conflicts" with a medical source's opinion, he "must explain why the opinion was not adopted." *Dioguardi*, 445 F. Supp. 2d at 297 (quoting S.S.R. 96-8p, 1996 WL 374184, at *7 (S.S.A. July 2, 1996)). Thus, when an ALJ adopts only portions of a medical opinion, he must explain why he rejected the remaining portions. *Raymer v. Colvin*, No. 14-CV-6009P, 2015 WL 5032669, at *5 (W.D.N.Y. Aug. 25, 2015) (citation omitted); *see also Reider v. Colvin*, No. 15-CV-6157P, 2016 WL 5334436, at *5 (W.D.N.Y. Sept. 23, 2016) (noting that the claimant is entitled to have the ALJ "explain any rejection of the limitations

assessed in [a medical source's] opinion"). It is not required, however, that the RFC assessment "perfectly correspond" with any of the medical source opinions cited in the ALJ's decision. *Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013) (citation omitted) (summary order). Rather, the ALJ is "entitled to weigh all of the evidence available to make an RFC finding that [i]s consistent with the record as a whole." *Id.*

Here, the ALJ afforded "great weight" to Dr. Toor's opinions and the RFC is consistent with those opinions. Tr. 26, 30-31, 756-61. The Court finds that the ALJ did not err when he relied on Dr. Toor's opinion, which he found supported by Dr. Toor's examination and consistent with the record,[5] to formulate the RFC. "It is well established that an ALJ may rely on the medical opinions provided by State agency consultants and that those opinion[s] may constitute substantial evidence." *Barber v. Comm'r of Soc. Sec.*, No. 6:15-CV-0338 (GTS/WBC), 2016 WL 4411337, at *7 (N.D.N.Y. July 22, 2016) (citations omitted).

As to Jackson's neck, Dr. Toor's examination notes reveal that she declined to lie down on the examination table in part due to neck pain and that she had neck pain with cervical spine rotation. Tr. 684-85, 752, 756-61. After the ALJ afforded "great weight" to Dr. Toor's opinions, he recognized Dr. Toor's suggestion that Jackson might have moderate limitations moving her neck. Tr. 31. Despite Jackson's contention that the ALJ did not "adequately explain" why he rejected such limitations, he specifically found that Jackson's "neck stiffness appeared to be secondary to subjective pain complaints," which the ALJ found "not fully supported by the clinical evidence or the two negative cervical spine x-rays." *Id.* As explained above, the ALJ is entitled to discount a claimant's credibility and a medical opinion that is inconsistent with the record, which

---

[5] *See* 20 C.F.R. 404.1527(c)(3) (ALJ will afford more weight to a medical source opinion that is supported by relevant evidence and is well explained), (c)(4) (ALJ will afford more weight to a medical source opinion that is consistent with the record as a whole).

15

is what the ALJ found here with respect to Jackson's alleged neck limitations. Accordingly, the ALJ did not err in evaluating Dr. Toor's opinion and he sufficiently explained why he declined to adopt neck limitations in the RFC.

For the reasons stated, the Court finds that the ALJ properly evaluated Dr. Donohue and Dr. Toor's opinions and that the resulting RFC determination is supported by substantial evidence.

### B. Second Argument: Improper Reliance on VE Testimony

Jackson also argues that the ALJ's step five finding is not supported by substantial evidence because he posed an incomplete hypothetical question to the VE. ECF No. 14 at 13-14. Specifically, Jackson asserts that the ALJ omitted Jackson's need to move around away from the work station, limitations in turning her head, time spent off task, and absences from work. *Id.*

At step five, the ALJ must determine whether the claimant can adjust to other work for which there are a significant number of jobs in the national economy. 20 C.F.R. § 404.1560(c). An ALJ can make the step five determination by adducing VE testimony. *McIntyre v. Colvin*, 758 F.3d 146, 151 (2d Cir. 2014). The ALJ may pose a hypothetical question to the VE and rely on the VE's response "as long as there is substantial record evidence to support the assumption[s] upon which the [VE] based his opinion and accurately reflect the limitations and capabilities of the claimant involved." *Id.* (quotation marks and citations omitted).

For the reasons stated previously, the Court finds that the ALJ's RFC determination is supported by substantial evidence, specifically Dr. Toor's opinion, the objective medical evidence, and the credibility of Jackson's statements; thus, any additional limitations—such as leaving the work station, head and neck restrictions, time off task, and absences—were unwarranted. After reviewing Jackson's hearing transcript, the Court finds that the hypothetical questions posed to the VE adequately reflected the RFC determination and that the ALJ was entitled to rely on the VE's

responses. Tr. 64-66. Accordingly, the ALJ did not err and his step five analysis is supported by substantial evidence.

## CONCLUSION

The Commissioner's Motion for Judgment on the Pleadings (ECF No. 16) is GRANTED and Plaintiff's Motion for Judgment on the Pleadings (ECF No. 13) is DENIED. Plaintiff's Complaint (ECF No. 1) is DISMISSED WITH PREJUDICE. The Clerk of Court is directed to enter judgment and close this case.

IT IS SO ORDERED.

Dated: July 5, 2018
Rochester, New York

HON. FRANK P. GERACI, JR.
Chief Judge
United States District Court